Alfred J. SCHUMER (doing business as Digitizer Technology Company), Plaintiff/Counterclaim Defendant–Appellant,

v.

LABORATORY COMPUTER SYSTEMS, INC., Defendant–Appellee,

and

Wacom Technology Corporation, Counterclaimant–Appellee.

No. 02–1100.

United States Court of Appeals, Federal Circuit.

DECIDED: Oct. 22, 2002.

Jerry A. Riedinger, Perkins Coie LLP, of Seattle, WA, argued for plaintiff/counterclaim defendant-appellant.

Joseph W. Berenato, III, Liniak Berenato Longacre & White, of Bethesda, MD, argued for defendant-appellee and counterclaimant-appellee. With him on the brief was Maurice U. Cahn, Cahn & Samuels, LLP, of Washington, DC.

Before NEWMAN, MICHEL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Alfred L. Schumer ("Schumer") appeals a judgment of the United States District Court for the Western District of Washington granting summary judgment in favor of Laboratory Computer Systems, Inc. ("LCS") and Wacom Technology Corporation ("Wacom"). The court held that LCS and Wacom did not infringe claims 1–10 of U.S. Patent No. 5,768,492 ("the '492 pat-

ent"), *Schumer v. Lab. Computer Sys., Inc.,* No. C99–0474L (W.D.Wash. Oct. 16, 2001) (order granting partial summary judgment of noninfringement of claims 1–10) (*"Noninfringement Order"*), and that claims 13 and 14 of the '492 patent were invalid and not infringed, *Schumer v. Lab. Computer Sys., Inc.,* No. C99–474L (W.D.Wash. Oct. 16, 2001) (order granting partial summary judgment of invalidity of claims 13 and 14) (*"Invalidity Order"*). Because the district court erred in construing claims 1–10 of the '492 patent, erred in finding clear and convincing evidence that claim 13 was anticipated, and failed to separately analyze claim 14, we vacate and remand.

## BACKGROUND

The '492 patent relates to digitizing tablets, or "digitizers," which are computer peripherals that translate a user's hand motions or instructions into digital coordinates suitable for use by a computer system. A digitizing tablet contains a grid of electrical leads, and when a pointer is placed over the grid, a current is induced in the electrical leads by the pointer, and the current from the various electrical leads is processed and communicated to the computer. The invention disclosed in the '492 patent involves methods implemented through hardware or software that add additional capabilities to conventional digitizing tablets. Schumer first filed the application leading to the '492 patent on June 17, 1991. The '492 patent issued on June 16, 1998.

LCS creates and distributes software drivers [1] to be used with various brands of digitizers distributed by third parties. Wacom is a distributor of digitizers sold throughout the United States. Wacom was a licensee of LCS software drivers.

At issue on appeal are method claims 1–10 and 13–14 of the '492 patent. Independent claims 1, 6, and 9 are representative of claims 1–10. The disputed claim language is emphasized. Claim 1 provides:

A method implemented by a first computer program running on a computer for transferring information from a digitizer connected to the computer to a second program running on the computer, the digitizer having a surface and a pointer and outputting the position of the pointer on the surface in a *coordinate system of the digitizer which coordinate system has a point of origin and has an angle of rotation 1 with respect to the digitizer and has a scale,* comprising:

(a) receiving a definition of a *second coordinate system* for the digitizer, which second coordinate system allows specification of points specified in the digitizer's coordinate system *but is not congruent with the digitizer's coordinate system because one of the following elements is different from the digitizer's coordinate system: location of the point of origin, or angle of rotation, or scale;*

(b) receiving a specification of a point reported by the digitizer to the computer specifying, in the digitizer's coordinate system, the location of the pointer;

(c) translating the coordinates of the digitizer's coordinate system into coordinates of the second coordinate system for the point; and

(d) providing the coordinates of the second coordinate system for the point to the second program.

---

**1.** A driver is a software link between a device and a program using that device that controls the device or translates between the device and the program.

'492 patent, col. 49, l. 47—col. 50, l. 2 (emphases added).

Claim 6 provides:

A method implemented by a first computer program running on a computer for transferring information from a digitizer connected to the computer to a second program running on the computer, the digitizer having a surface and a pointer and outputting the position of the pointer on the surface in a *coordinate system of the digitizer which coordinate system has a point of origin and has an angle of rotation with respect to the digitizer and has a scale,* comprising:

(a) receiving a first and a second definition of boundaries of a first and a second region within the range of movement of the pointer;

(b) receiving a definition of a *first and a second regional coordinate system* for each of the first and the second regions, which first and second regional coordinate systems each allow specification of points specified in the digitizer's coordinate system but *are not congruent with the digitizer's coordinate system because one of the following elements is different from the digitizer's coordinate system: location of the point of origin, scale, or angle of rotation;*

(c) receiving coordinates of a point reported by the digitizer to the computer specifying, in the digitizer's coordinate system, the location of the pointer;

(d) if the location of the pointer is within the boundaries of the first region, translating the coordinates of the point in the digitizer's coordinate system into coordinates of the first regional coordinate system for that point; and

(e) if the location of the pointer is within the boundaries of the second region, translating the coordinates of the point in the digitizer's coordinate system into coordinates of the second regional coordinate system for that point; and

(f) providing the set of coordinates of the regional coordinate system to the second program.

'492 patent, col. 50, l. 33—col. 51, l. 2 (emphases added). Claim 9 provides:

A method implemented by a first computer program running on a computer for executing a control command from a second program running on the computer directed to any one of a plurality of regions, comprising:

(a) receiving a command to partition the active area of the digitizer into a *plurality of regions,* each of which has a *coordinate system which coordinate system has a point of origin and has an angle of rotation with respect to the digitizer and has a scale* wherein the coordinate system of a first region is *not congruent with the coordinate system of another region because one of the following elements is different from the other coordinate system: location of the point of origin, angle of rotation, or scale*

(b) storing the partition information in a memory;

(c) receiving from the second program a command directed to one of the regions; and

(d) executing the command with respect to the appropriate region.

'492 patent, col. 51, ll. 12–31 (emphases added). Claim 13 provides:

A method implemented by a first computer program running on a computer for transferring from a second program

running on the computer to any one of a plurality of digitizers each with a different command format for commanding the digitizer to perform a function, a command to perform said function comprising:

(a) receiving the command directed by the second program to one of the plurality of digitizers in a format which is inconsistent with a command format for the digitizer;

(b) translating the command to the command format for the digitizer; and

(c) *providing the translated command to the digitizer.*

'492 patent, col. 52, ll. 16–29 (emphasis added). Claim 14 provides:

A computer readable medium containing a computer program which program causes a computer to perform the method of claim 13.

'492 patent, col. 52, ll. 30–32.

## PROCEDURAL HISTORY

Schumer filed a complaint on March 31, 1999, alleging that LCS had infringed the '492 patent. Wacom, an LCS customer, then filed suit against Schumer seeking a declaratory judgment that Wacom's products did not infringe the claims of the '492 patent and that the asserted claims of the '492 patent were invalid. The two actions were consolidated on October 2, 2000. Wacom and LCS each filed a motion for partial summary judgment. The first motion, filed by Wacom, sought summary judgment of noninfringement of claims 1–10. The second motion, filed by LCS, sought summary judgment of invalidity of claims 13 and 14 on the basis of anticipation under 35 U.S.C. § 102(b). LCS and Wacom subsequently joined each other's motions. The district court granted both motions on October 16, 2001.

A. Summary judgment of noninfringement of claims 1–10

The district court construed claims 1–10 to require that a device performing the claimed methods must both (1) have a "point of origin," an "angle of rotation with respect to the digitizer," and a "scale"; and (2) be capable of translating all three elements. The district court first determined that the preamble of claim 1 "gives life and meaning to the invention" and was therefore a claim limitation. *Noninfringement Order* at 4. The district court construed the preamble, which states that the device simply "has a point of origin and has an angle of rotation with respect to the digitizer and has a scale," as requiring that the device have these three attributes, *i.e.,* a point of origin, angle of rotation, and scale. *Id.* at 4–5.

The district court additionally construed the following language in the body of claim 1:

receiving a definition of a second coordinate system for the digitizer, which second coordinate system ... is not congruent with the digitizer's coordinate system because *one of the following elements is different from the digitizer's coordinate system: location of the point of origin, or angle of rotation, or scale.*

'492 patent, col. 49, ll. 55–61 (emphases added). The district court noted that "[t]he parties dispute whether the term 'and' [from the preamble] or 'or' [from the body of the claim] applies to requirements of a point of origin, an angle of rotation, and a scale," and concluded that "[t]he language of the claims and their preambles indicates that 'and' is the appropriate designation." *Noninfringement Order* at 4. Accordingly, the district court construed the language of the body of the claim in light of the preamble to require:

The claims define three essential attributes of the digitizer coordinate system

[*i.e.*, a point of origin, angle of rotation, and scale]. Every data translation may not involve varying all three attributes, but *the first computer system has to be capable of translating all three attributes.*"

*Id.* at 5 (emphasis added). The court also found that the prosecution history demonstrated that Schumer had surrendered any other claim construction. *Id.*

Applying its claim construction to the accused devices, the district court noted that "Wacom and LCS have provided testimony that their drivers do not have an angle of rotation," and concluded that "[o]n that basis alone, Wacom and LCS are able to win summary judgment on non-infringement of Claims 1–10." *Noninfringement Order* at 4. The district court further found that "Wacom and LCS do not [literally] infringe upon Claims 1–10 because the '492 patent requires an angle of rotation, an origin and a scale." *Id.* at 6. While the district court's opinion is less than clear, it also appears that the district court found that the accused products do not infringe because they do not have the ability to translate the angle of rotation. *See id.* The district court did not address infringement under the doctrine of equivalents, concluding that "[b]ecause the Court found no literal infringement of the '492 patent, it need not address the non-infringement arguments under the doctrine of equivalents." *Id.*

**B.** Summary judgment of invalidity of claims 13 and 14

■ The district court found claims 13 and 14 invalid under 35 U.S.C. § 102(b)[2] as anticipated by a driver (as used with a digitizer) that LCS developed and licensed to Seiko Corporation ("the Seiko driver").[3] The district court determined that the Seiko driver was publicly "available more than one year prior to" the effective filing date of the '492 application. *Invalidity Order* at 3. The parties submitted competing affidavits contesting the status of the Seiko driver as prior art and the functions and capabilities of the Seiko driver. LCS submitted a declaration from Robert Dezmelyk, the purported programmer of the Seiko driver and current LCS president. Schumer submitted a declaration contradicting Dezmelyk's declaration. In response, LCS submitted a supplemental declaration from Dezmelyk to refute Schumer's declaration. Relying heavily on Dezmelyk's supplemental declaration, the district court found that the Seiko driver was prior art under section 102(b) and that it disclosed every limitation of claim 13, including the requirement that the driver send translated commands directly to the digitizer. *Id.* at 7.

Without separately analyzing claim 14, the district court stated that "[b]ecause Claim 13 is the independent claim and Claim 14 is dependent upon Claim 13, the analysis of Claim 13 will determine the

---

**2.** Section 102 provides in relevant part: "A person shall be entitled to a patent unless . . . (b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States. . . ." 35 U.S.C. § 102 (2000).

**3.** Claim 13 is a method claim. A method claim is infringed only by one practicing the patented method. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775, 28 USPQ2d 1378, 1382 (Fed.Cir.1993). Similarly, a method claim

will be anticipated by an earlier device performing all of the operative steps of the method. *See Polaroid Corp. v. Eastman Kodak Co.*, 789 F.2d 1556, 1573, 229 USPQ 561, 574 (Fed.Cir.1986) (citing *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537, 9 S.Ct. 389, 32 L.Ed. 738 (1889)) ("[T]hat which infringes if later anticipates if earlier."). Here, the prior art device is the Seiko driver, which is an earlier device allegedly performing all of the steps of the method of claim 13.

validity of Claim 14." *Invalidity Order* at 3. The district court granted "partial summary judgment regarding the invalidity of claims 13 and 14 ... because [Wacom and LCS] have provided clear and convincing evidence that claim 13 was anticipated by the Seiko Driver. Because the claims are invalid, there can be no infringement." *Id.* at 7.

Schumer timely filed this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review a district court's grant of summary judgment without deference. *Husky Injection Molding Sys., Ltd. v. R & D Tool & Eng'g Co.,* 291 F.3d 780, 784, 62 USPQ2d 1834, 1836 (Fed.Cir.2002). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

## DISCUSSION

### I. Infringement

#### A. Claim Language

■ Initially, we note that the district court made a fundamental error in construing claims 1–10: it read the preamble of claim 1 as imposing a claim limitation.

The preambles of claims 1 and 6 are identical:

A method implemented by a first computer program running on a computer for transferring information from a digitizer connected to the computer to a second program running on the computer, the digitizer having a surface and a pointer and outputting the position of the pointer on the surface in a coordinate system of the digitizer *which coordinate system has a point of origin and has an angle of rotation with respect to the digitizer and has a scale,* comprising ...

'492 patent, col. 49, ll. 46–54, and col. 50, ll. 33–41 (emphasis added).

■ The district court concluded, "[t]he preamble is a claim limitation in this case because it gives life and meaning to the invention." *Noninfringement Order* at 4. It is well settled that "[i]f the body of the claim sets out the complete invention, and the preamble is not necessary to give 'life, meaning and vitality' to the claim, 'then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation.'" *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.,* 246 F.3d 1368, 1373–74, 58 USPQ2d 1508, 1512 (Fed.Cir.2001) (quoting *Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1166 (Fed.Cir.1999)).

Here, the preamble simply describes features that necessarily exist in any coordinate system for a digitizer—a point of origin, an angle of rotation, and a scale. The preamble does not specify how the device is to operate with respect to those features. The language of the body of the claim "sets out the complete invention" in that it provides in detail the functional attributes of the device that performs the methods. This is a situation where the language of the preamble is superfluous. *See Manning v. Paradis,* 296 F.3d 1098, 1103, 63 USPQ2d 1681, 1685 (Fed.Cir. 2002). We conclude that the language of the preamble of claims 1 and 6 is not a claim limitation.[4]

4. Identical language to that in the preambles of claims 1 and 6 appears in the body of claim 9:

A method ... comprising:
 receiving a command to partition the active area of the digitizer into a plurality of

■ The district court also erred in construing the language of the body of the claims. The body of claim 1 provides in relevant part:

receiving a definition of a *second coordinate system* for the digitizer, which second coordinate system allows specification of points specified in the digitizer's coordinate system *but is not congruent with the digitizer's coordinate system because one of the following elements is different from the digitizer's coordinate system: location of the point of origin, or angle of rotation, or scale* . . . .

'492 patent, col. 49, ll. 55–62 (emphasis added).[5] The district court construed the language in the body of the claim in light of the preamble:

The claims define three essential attributes of the digitizer coordinate system [*i.e.*, a point of origin, angle of rotation, and scale]. Every data translation may not involve varying all three attributes, but *the first computer system has to be capable of translating all three attributes.*

*Noninfringement Order* at 5 (emphasis added). The district court thus effectively substituted the word "and" from the preamble for the word "or" used in the body of the claim. The district court concluded that "[t]he language of the claims and their preambles indicates that 'and' is the appropriate designation" and that "Schumer's reliance on the term 'or' that appears later in the claims is misleading." *Id.* at 4–5 (emphasis added). Accordingly, the district court construed this language to require that "[t]he claims define three essential attributes of the digitizer coordinate system [i.e., a point of origin, angle of rotation, and scale]. Every data translation may not involve varying all three attributes, but *the first computer system has to be capable of translating all three attributes.*" *Id.* at 5 (emphasis added).

The district court's claim construction contradicts the plain meaning of the word "or" in the claims. The proper approach is to construe the claim language using standard dictionary definitions, because here, the claims have no specialized meaning. *See Texas Digital Sys., Inc. v. Telegenix, Inc.*, No. 02–1032, slip op. at 8–9, 2002 WL 31307212 (Fed.Cir. Oct. 16, 2002). Webster's Third International Dictionary defines "or" as follows: "used as a function word to indicate (1) an alternative between different or unlike things, states, or actions . . . (2) choice between alternative things, states, or courses." *Webster's Third New Int'l Dict.* 1585 (1967). We have consistently interpreted the word "or" to mean that the items in the sequence are alternatives to each other. In *Brown v. 3M*, 265 F.3d 1349, 1352, 60 USPQ2d 1375, 1377 (Fed.Cir.2001), we upheld the district court's construction of the word "or" in the claim as meaning that the apparatus was capable of converting " 'only two-digit, only three-digit, only four-digit, or any

---

regions, each of which has a *coordinate system which coordinate system has a point of origin and has an angle of rotation with respect to the digitizer and has a scale* . . . .

'492 patent, col. 51, ll. 13–21 (emphasis added). The limitation has been satisfied here, because all coordinate systems for a digitizer necessarily have an angle of rotation. The declarations relied upon by the appellees do not assert the contrary. They merely state, in virtually identical language, that the method used in the appellees' devices is not concerned with the angle of rotation: "No LCS digitizer driver implements or has implemented a method in which the coordinate system of the digitizer includes angle of rotation as a component. . . . In addition, no LCS driver translates angle of rotation when the position of the pointer is received by the computer." J.A. 212; *see also* J.A. 121–22.

**5.** Similar language appears in the body of claims 6 and 9.

combination of two-, three-, and four-digit date-data,'" by finding that the interpretation of the word "or" involved a "plain reading of the claim text. These are not technical terms or art, and do not require elaborate interpretation." In *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1331, 60 USPQ2d 1135, 1138 (Fed.Cir.2001), we agreed with the district court's construction of "or" as "designating alternatives." We noted that "there is no indication that Kustom used these words in a different meaning. Particularly, there is no basis whatsoever for believing that Kustom intended its usage of 'or' somehow to embrace 'and.'" *Id.*

Giving the term "or" its accepted definition, however, is not the end of the inquiry. A question remains as to whether the claims should be interpreted to mean that the method must be capable of translating each of the three alternative variables, i.e., point of origin, angle of rotation, and scale, as the district court apparently held.

If this were a product patent, the concept of capability would have relevance. So too it would have relevance if this process patent were tied to a "particular machine or apparatus."[6] But here we deal with a method claim which is not tied to a particular device but that "operate[s] to change articles or materials to a 'different state or thing.'" *Gottschalk*, 409 U.S. at 71, 93 S.Ct. 253. Such a claim must be interpreted to cover any process that performs the method steps. Here in claim 1 the method is identified as "receiving a definition of a second coordinate system for the digitizer, which ... is not con-

gruent with the digitizer's coordinate system because one of the following elements is different ..." '492 patent, col. 49, ll. 55-61. One of those elements is scale. Thus, for example, a method that translates from a device where only the scale is different is within the literal scope of the claim. The method is performed if any of the three features of a coordinate system is translated, and thus, infringement occurs if any one of these translations is performed.

### B. Prosecution History

The prosecution history does not compel a different result. The district court concluded that the prosecution history foreclosed a construction of claim 1 under which the device need only translate one of the three attributes, and concluded further that the prosecution history compelled a requirement that the device be capable of translating all three attributes: "Based on the number of times Schumer amended his claims and altered the language regarding the angle of rotation to overcome the Logan patent, Schumer is estopped by his prosecution history from discounting the importance of the angle of rotation limitation." *Noninfringement Order* at 5.

It is well established that statements made during prosecution are used to interpret the scope and meaning of ambiguous claim terminology. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir. 1996) ("This [prosecution] history contains the complete record of all the proceedings before the Patent and Trademark Office,

---

**6.** In *Gottschalk v. Benson*, 409 U.S. 63, 71, 93 S.Ct. 253, 34 L.Ed.2d 273 (1972), the Supreme Court reiterated the proposition that "a process patent must either be tied to a particular machine or apparatus or must operate to change articles or materials to a 'different state or thing.'" The Court referred to the well established definition of

"process" stated in *Cochrane v. Deener*, 94 U.S. 780, 788, 24 L.Ed. 139 (1877), "A process is a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing."

including any express representations made by the applicant regarding the scope of the claims. As such, the record before the [PTO] is often of critical significance in determining the meaning of the claims."). There is no ambiguity here. But even where the claim language is not ambiguous, "[t]he prosecution history limits the interpretation of claim terms so as to exclude any interpretation that was disclaimed during prosecution." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576, 34 USPQ2d 1673, 1676 (Fed. Cir.1995). Thus, the prosecution history limits even clear claim language so as to exclude any interpretation that was surrendered during prosecution, but only where the accused infringer can demonstrate that the patentee surrendered that interpretation " 'with reasonable clarity and deliberateness.' " *Pall Corp. v. PTI Techs., Inc.*, 259 F.3d 1383, 1393, 59 USPQ2d 1763, 1769 (Fed.Cir.2001) (quoting *N. Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1294–95, 55 USPQ2d 1065, 1075 (Fed.Cir.2000)), *vacated on other grounds by PTI Techs., Inc. v. Pall Corp.*, —— U.S. ——, 122 S.Ct. 2324, 153 L.Ed.2d 152 (2002). There was no such clear surrender here.

The Examiner first rejected the claims that eventually issued as claims 1–10 as unpatentable over the Logan patent, U.S. Patent No. 4,821,029 ("Logan"), under 35 U.S.C. § 103(a). Logan disclosed a conventional prior art digitizer that allowed creation of regions, each with its own coordinate system. As to claim 42 (issued claim 1), the Examiner stated:

> [I]t would have been obvious to one of ordinary skill in the art at the time the invention was made to realize Logan includes means for translating the coordinates of the digitizer's coordinate system (touch screen) into the coordinates of the second coordinate system (sub-area or chamber) when the pointer is located within the region so as to designate the sub-area on the touch screen.

Office Action of Feb. 22, 1996, at 6.

In response, Schumer made a Preliminary Amendment in which he added the following emphasized language:

> outputting the position of the pointer on the surface in a coordinate *system* of the digitizer *which coordinate system has a point of origin where the coordinates are 0,0 and has an angle of rotation such that the line from coordinate 0,0 to coordinate 0,5 defines an angle of rotation with respect to the digitizer and has a scale such that the distance from coordinate 0,0 to coordinate 0,5 is a certain physical length, comprising* ...

Preliminary Amendment of April 8, 1996, at 1 (Emphasis added). Schumer explained:

> The Applicant now has a greater understanding of the Examiner's concerns with respect to the meaning of the terms "origin," "scale," and "rotation" as used in the claims. *To clarify that the limitations using this terminology create a nonobvious distinction over Logan, the claims have been amended to make this terminology much more specific."*
>
> ...
>
> [E]ach of the coordinate systems in Logan uses a single point of origin.... In each of the different coordinate systems disclosed by Logan, the *point of origin* where the coordinates are 0,0 is the same. Similarly, the multiple coordinate systems in Logan all use the same angle of rotation.... In Logan, the multiple coordinate systems all have the *same angle of rotation* with respect to the digitizer.
>
> ...
>
> Also, when the scale is defined to be a specific physical length from a point de-

fined as another specific coordinate, for the multiple coordinate systems in Logan, the *scale of each of the coordinate systems is the same*. *Id.* at 10–11 (Emphases added). Thus, Schumer explained that in Logan, the regions' coordinate systems did not have the ability to deviate from the coordinate system of the digitizer: the scale was always the same, the point of origin always had to be in a corner of the region, and the angle of rotation was always the same. Schumer distinguished Logan on three grounds: Logan could not translate to coordinate systems with different origins, with different scales, or with different angles of rotation. *Id.*

The Examiner responded with a second office action, stating, "Applicant's arguments with respect to claims 42–51, 60–67 have been considered but are deemed to be moot in view of the new grounds of rejection." Office Action of April 3, 1997, at 3 (referring to the § 112 rejection discussed below).

The Examiner ultimately rejected claims 42–51 under 35 U.S.C. § 112, first paragraph, because "the specification does not disclose which coordinate system has a point of origin where the coordinates are 0,0 . . . ." *Id.* at 2.

In response to the second office action, Schumer amended his claims to overcome the section 112 rejection by deleting the following language: "where the coordinates are 0,0," "such that the line from coordinate 0,0 to coordinate 0,5 defines an angle of rotation," and "such that the dis-

tance from coordinate 0,0 to coordinate 0,5 is a certain physical length." Schumer explained: "Applicant has deleted the objected to language from claims 42, 46, and 50" to overcome the section 112 rejection "for including in the preamble language which is not found in the specification."

Thus, the examiner never substantively addressed Schumer's argument and amendment distinguishing the Logan prior art, and instead declared those arguments "moot."

In summary, the prosecution history makes clear that Schumer distinguished the prior art Logan patent on the ground that it did not disclose the ability to translate any of the three parameters. Schumer's proffered interpretation is not inconsistent with what he argued during prosecution to obtain allowance. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1581–83, 34 USPQ2d 1673, 1681–83 (Fed.Cir.1995).

We conclude that the prosecution history does not compel a limitation of the claim language different from its plain meaning, and we conclude that the correct construction requires that the device performing the claimed method need only have the ability to translate one of the three attributes of the coordinate system.

Having found the district court's claim construction erroneous, we also vacate the holding of noninfringement, because the parties have agreed for purposes of this appeal that the accused products should be assumed to translate the point of origin and scale.[7]

---

7. The district court's failure to analyze infringement under the doctrine of equivalents is also reversible error. The district court's statement that: "[b]ecause the Court has found no literal infringement of the '492 patent, it need not address the non-infringement arguments under the doctrine of equivalents," *Noninfringement Order* at 6, is simply wrong as a matter of law. Failure of literal infringement is precisely the realm in which the doctrine of equivalents operates. If on remand the district court finds no literal infringement, infringement under the doctrine of equivalents should be addressed, as well as the issue of prosecution history estoppel.

## II. Invalidity

█ The district court held claims 13 and 14 invalid as anticipated by the prior art Seiko driver under 35 U.S.C. § 102(b). Specifically, the district court found that LCS developed and licensed the Seiko driver to Seiko Corporation more than one year prior to the effective filing date of the application that issued as the '492 patent, such that the Seiko driver was "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States," 35 U.S.C. § 102(b) (2000), and that it performed every limitation of claim 13. *Invalidity Order* at 7. In so determining, the district court erred. The evidence here is not sufficient for summary judgment.

### A. Claim 13

█ "A patent shall be presumed valid." 35 U.S.C. § 282 (2000). To overcome this presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence. *Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1036 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1172, 122 S.Ct. 1196, 152 L.Ed.2d 136 (2002) (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.1984)). Whether a patent is anticipated under section 102(b) is a question of fact. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20, 57 USPQ2d 1057, 1061 (Fed. Cir.2000). On summary judgment, all justifiable inferences are made in favor of the nonmovant, here Schumer. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). LCS failed to meet its high burden of showing invalidity on summary judgment.

The recited invention of independent claim 13 requires an interface capable of multiple translation of differing command formats into a single native format for a digitizer, and sending a translated command to a digitizer. This allows multiple digitizers having different command formats to operate on a single computer by enabling multiple digitizers to communicate with a single computer. Claim 13 provides:

> A method implemented by a first computer program running on a computer for transferring from a second program running on the computer to any one of a plurality of digitizers each with a different command format for commanding the digitizer to perform a function, a command to perform said function comprising:
>
> (a) receiving the command directed by the second program to one of the plurality of digitizers in a format which is inconsistent with a command format for the digitizer;
>
> (b) *translating the command to the command format for the digitizer;* and
>
> (c) *providing the translated command to the digitizer.*

'492 patent, col. 52, ll. 16–29 (emphases added).

█ The Seiko driver reference is identified as anticipating because, LCS argues, the Seiko driver performs the steps of the method of claim 13. Evidence of invalidity must be clear as well as convincing. Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely

conclusory. *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372, 62 USPQ2d 1449, 1456 (Fed.Cir.2002) ("Mere denials or conclusory statements are insufficient."). And if the testimony relates to prior invention and is from an interested party, as here, it must be corroborated. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350, 60 USPQ2d 1091, 1094 (Fed.Cir.2001); *see also Singh v. Brake*, 222 F.3d 1362, 1367, 55 USPQ2d 1673, 1676 (Fed.Cir.2000) (recognizing the "concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to obtain a patent or to maintain an existing patent").

 It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage. Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony. Here both of Dezmelyk's declarations lack the requisite clarity. Dezmelyk merely sets forth his understanding of the operation and steps performed by the Seiko driver and describes what he considered to be known to one of ordinary skill prior to Schumer's invention (Dezmelyk Dec. ¶¶ 5–22). He does not clearly describe the operative steps of the method recited in claim 13, nor how those operative steps are performed by the Seiko driver.[8]

The burden of proving invalidity on summary judgment is high. We find that LCS failed to prove by clear and convincing evidence on summary judgment that the Seiko driver, even if it were prior art, disclosed "each and every limitation" of claim 13, as is required to prove anticipation.

## B. Claim 14

Finally, the district court erred in not separately analyzing the validity of claim 14. The district court stated that "[b]ecause Claim 13 is the independent claim and Claim 14 is dependent upon Claim 13, the analysis of Claim 13 will determine the validity of Claim 14." *Invalidity Order* at 3. Without separately analyzing claim 14, the district court granted "partial summary judgment regarding the invalidity of claims 13 and 14 . . . because [Wacom and LCS] have provided clear and convincing evidence that claim 13 was anticipated by the Seiko Driver. Because the claims are invalid, there can be no infringement." *Id.* at 7.

When determining the validity of the claims of a patent, each claim must be separately considered:

Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting invalidity.

35 U.S.C. § 282 (2000); *Sandt*, 264 F.3d at 1356, 60 USPQ2d at 1098 ("Because dependent claims contain additional limitations,

---

**8.** The same clarity, of course, is essential in opposing affidavits or testimony. Schumer's declaration disputes the statements made in Dezmelyk's declaration, but does not clearly articulate which limitations of claim 13 were not disclosed in the Seiko driver (Schumer Dec. ¶¶ 5–27).

they cannot be presumed to be invalid as obvious just because the independent claims from which they depend have been properly so found."). On remand, the district court should separately analyze the validity of claim 14.

## CONCLUSION

Summary judgment of noninfringement of claims 1–10 should not have been granted because the district court erred in construing the language of the claims. Summary judgment of invalidity of claims 13 and 14 should not have been granted because claim 13 was not shown to be invalid by clear and convincing evidence, and dependent claim 14 was never separately addressed. We accordingly vacate and remand.

The district court remains free, of course, to entertain new motions for summary judgment on these issues if it chooses to do so.

*VACATED AND REMANDED.*

## COSTS

No costs.