NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDGE SYSTEMS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, AXIA MEDSCIENCES, A DELAWARE LIMITED LIABILITY COMPANY,**
*Plaintiffs-Appellees*

**v.**

**RAFAEL NEWTON AGUILA, AKA RALPH AGUILA, DBA HYDRADERMABRASION SYSTEMS,**
*Defendant-Appellant*

---

2015-1507

---

Appeal from the United States District Court for the Southern District of Florida in No. 1:14-cv-24517-KMM, Judge K. Michael Moore.

---

Decided:  December 21, 2015

---

BRENTON R. BABCOK, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, for appellees.  Also represented by ALI S. RAZAI.

RAFAEL NEWTON AGUILA, Rottenburg am Neckar, 72108, Germany, pro se.

---

Before PROST, *Chief Judge,* LOURIE and WALLACH, *Circuit Judges.*

PER CURIAM.

Appellant Rafael Newton Aguila ("Mr. Aguila") d/b/a Hydradermabrasion Systems appeals the decision of the United States District Court for the Southern District of Florida granting a preliminary injunction to Edge Systems LLC ("Edge") and Axia Medsciences LLC ("Axia") (together, "Appellees") to enjoin Mr. Aguila from infringing upon their trademarks and trade dress and from infringing U.S. Patent No. 6,299,620 ("the '620 patent") that covers an integral component of Appellees' machine. *See Edge Sys. LLC v. Aguila*, No. 14-24517-CIV-MOORE/MCALILEY (S.D. Fla. Feb. 24, 2015) (Preliminary Injunction Order) (Appellees' Suppl. App. 34–36).[1] For the reasons set forth below, we affirm.

BACKGROUND

I. Products at Issue

Edge manufactures and sells a hydradermabrasion machine marketed as HydraFacial MD. "This machine utilizes a 'wet system' that exfoliates facial skin tissue by using an abrasive tip in combination with the application of serums, followed by a vacuum source to extract dead skin cells." Appellees' Suppl. App. 2. This machine "incorporates technology . . . claimed in six U.S. patents owned by [] Axia and exclusively licensed to Edge." *Id.*

Mr. Aguila "sells a hydradermabrasion machine known as HydraDerm MD or Hydradermabrasion MD."

---

[1]    Appellees filed a Supplemental Appendix because "Appellant declined to cooperate with Appellees to prepare a Joint Appendix." Appellees' Br. 2 n.1.

*Id.* Mr. Aguila's machine "incorporates the use of serums that have the same or very similar names as the serums used in [Edge's machines], and [Mr. Aguila] sells his machines using the same name as [] Edge—'Edge Systems'—and the same logo that . . . Edge uses." *Id.*

## II. The '620 Patent

Edge's HydraFacial MD incorporates technology from, *inter alia*, the '620 patent. Axia owns the '620 patent, which is entitled "Instruments and Techniques for Inducing Neocollagenesis in Skin Treatments."

Independent claim 1 is the only claim in dispute, it recites:

> A system for treating surface layers of a patient's skin, comprising:
>
> (a) an instrument body with a distal working end for engaging a skin surface;
>
> (b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto;
>
> (c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and
>
> (d) at least one outflow aperture in said skin interface in communication with a negative pressurization source.

'620 patent col. 9 ll. 54–63.

## III. Proceedings

In November 2014, Appellees filed a complaint against Mr. Aguila alleging, *inter alia*, patent, trademark, and trade dress infringement. The next month, Appellees' Emergency Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Regarding Preliminary

Injunction was granted. The district court referred consideration of Appellees' Motion for Preliminary Injunction to Magistrate Judge Chris McAliley, who later held an evidentiary hearing on the matter.

In January 2015, Mr. Aguila filed a Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting lack of jurisdiction due to *forum non conveniens*, among other things. *Edge Sys. LLC v. Aguila*, No. 14-24517-CIV-MOORE/MCALILEY (S.D. Fla. Jan. 29, 2015) (Magistrate Judge's Report and Recommendations on Motion for Preliminary Injunction) (Appellees' Suppl. App. 1–33). Later that month, while Mr. Aguila's Motion to Dismiss remained pending, the Magistrate Judge issued a Report and Recommendation on Appellees' Motion, recommending the district court grant the preliminary injunction. Mr. Aguila filed Objections to the Report and Recommendation in February 2015. In consideration of Mr. Aguila's objections, the district court conducted a de novo review of the record and determined the Magistrate Judge's factual findings were supported by the record and ultimately adopted in full the Report and Recommendation. The district court subsequently granted Appellees' Motion for Preliminary Injunction.

In March 2015, Mr. Aguila filed a Notice of Interlocutory Appeal regarding the Order Adopting Report and Recommendations and Granting the Preliminary Injunction. In June 2015, the district court denied Mr. Aguila's 12(b)(1) Motion to Dismiss for lack of jurisdiction due to *forum non conveniens*.

We have jurisdiction to review the district court's grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1), (c)(1) (2012).

## DISCUSSION

Mr. Aguila argues the district court erred: (1) in not dismissing the case under *forum non conveniens*; (2) in

granting a preliminary injunction for patent infringement; (3) in granting a preliminary injunction for trademark infringement; and (4) in granting a preliminary injunction for trade dress infringement. We address each argument in turn.

### I. The Issue of *Forum Non Conveniens* Is Not Properly Before This Court

"Whether a notice of appeal has adequately presented an issue to this court is a question of Federal Circuit law." *Minn. Min. & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1308–09 (Fed. Cir. 2002). Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure ("FRAP") requires the notice of appeal to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). "[T]he purpose of this requirement is to ensure that the filing provides sufficient notice to other parties and the courts." *Smith v. Barry*, 502 U.S. 244, 248–49 (1992) (citations omitted). "[F]ailure to designate the judgment appealed from under FRAP 3(c)(1)(B) would lead to uncertainty as to the scope of an appellate decision." *Durr v. Nicholson*, 400 F.3d 1375, 1382 (Fed. Cir. 2005). Indeed, the Supreme Court has held that, "[a]lthough courts should construe Rule 3 liberally when determining whether it has been complied with, noncompliance is fatal to an appeal." *Smith,* 502 U.S. at 248.

Mr. Aguila's Notice of Appeal stems from the district court's grant of a preliminary injunction. The district court did not take up the issue of *forum non conveniens*[2]

---

[2]    *Forum non conveniens* is "nothing more or less than a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Am. Dredging Co. v. Miller,* 510 U.S. 443, 453 (1994). Application of this doctrine is

until after the evidentiary proceeding that ultimately led to the issuance of the Preliminary Injunction. *Compare* Appellees' Suppl. App. 50 (Docket Entry 97 listing Notice of Interlocutory Appeal regarding Docket Entry 89 Order Adopting Report and Recommendations and Docket Entry 90 Preliminary Injunction), *with id.* at 48 (Docket Entry 77 Motion to Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure), *and id.* at 55 (Docket Entry 110 Order denying Docket Entry 77 Motion to Dismiss for Lack of Jurisdiction).

Even with a liberal construction of the notice requirement in this case, a finding of no jurisdiction to hear Mr. Aguila's *forum non conveniens* argument is warranted. Mr. Aguila provided notice that the issue on appeal was the district court's grant of a preliminary injunction, not *forum non conveniens.* Expanding the scope of the specifically limited interlocutory Notice of Appeal would be improper. *See Durango Assocs., Inc. v. Reflange, Inc.,* 912 F.2d 1423, 1425 (Fed. Cir. 1990) ("Durango did not misdescribe or 'forget' to mention the '246 [patent] issues. Durango clearly and specifically intended to confine its notice in 90–1100 only to the '944 [patent] issues. Durango cannot now expand the scope of its specifically limited notice of appeal." (footnote omitted)); *cf. Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 F. App'x 603, 606 (Fed. Cir. 2007) (unpublished) ("NAF's reference to the injunction does not negate its reference to the district court's judgment as the subject of appeal, especially given

---

entrusted to "'the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Id.* at 455 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

the principle that notices of appeal are to be liberally construed." (internal quotation marks and citation omitted)); *see also id.* at 606 n.1 ("NAF did not confine its notice to the propriety of injunctive relief, but instead designated the district court's final judgment for appeal and then added a statement specifically referring to the injunction.").

Further, Mr. Aguila has not filed a motion for leave to amend his Notice of Appeal to include the issue of *forum non conveniens*. Accordingly, we do not have jurisdiction to hear Mr. Aguila's arguments on matters beyond what is stated in his Notice of Appeal—i.e., the District Court's Order granting a Preliminary Injunction against Mr. Aguila.

## II. The District Court Did Not Abuse Its Discretion in Granting the Preliminary Injunction

### A. Standard of Review

We apply the law of the regional circuit, the Eleventh Circuit in this instance, when we review the district court's grant, denial, or modification of a preliminary injunction. *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013) (citation omitted). The Eleventh Circuit "review[s] a district court's order granting or denying a preliminary injunction for abuse of discretion." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) (citation omitted). We must affirm the district court's decision unless "we at least determine that the district court has made a 'clear error of judgment,' *United States v. Kelly,* 888 F.2d 732, 745 (11th Cir. 1989), or has applied an incorrect legal standard, *Cheney v. Anchor Glass Container Corp.,* 71 F.3d 848, 849 n.2 (11th Cir. 1996)." *SunAmerica Corp. v. Sun Life Assur. Co. of Can.*, 77 F.3d 1325, 1333 (11th Cir. 1996).

## B. The *Winter* Factors Support Granting a Preliminary Injunction for Patent Infringement

A party seeking a preliminary injunction must establish (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted). We refer to these considerations as the *Winter* Factors and examine them in turn.

Under the first *Winter* Factor, a patentee "must demonstrate that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (internal quotation marks and citation omitted). A court's patent infringement analysis involves two steps: (1) "the court determines the scope and meaning of the asserted claims"; and (2) "the properly construed claims are compared to the allegedly infringing device." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998) (internal citations omitted). However, the preliminary injunction "should not issue if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit." *AstraZeneca LP*, 633 F.3d at 1050 (citation omitted).

Appellees alleged in their Motion for Preliminary Injunction that Mr. Aguila infringed claim 1 of the '620 patent. During the preliminary injunction proceedings, Mr. Aguila did not dispute the meaning of claim 1 nor did he dispute that his allegedly infringing machines contained every element of claim 1. Appellees' Suppl. App. 25–26. The Magistrate Judge construed the terms of

claim 1 consistent with their ordinary and customary meanings. *Id.* at 25. The Magistrate Judge also determined Appellees "established the element of infringement." *Id.* at 26. Given this finding, Mr. Aguila has not raised a substantial question regarding infringement.

The court then turned to the validity of the '620 patent, which was disputed by Mr. Aguila. *Id.* He argued that U.S. Patent No. 6,241,739 ("the '739 patent") anticipated the '620 patent; however, Mr. Aguila "offered no testimony or other evidence to demonstrate how the '739 [p]atent anticipates the '620 [p]atent." *Id.* at 27; *see also id.* (citing *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) (failing to articulate how a prior art reference anticipates the patent in question is insufficient evidence of invalidity)). The Magistrate Judge determined Mr. Aguila "failed to rebut the presumption of patent validity" and Appellees made a "strong showing that the '620 [p]atent is valid." *Id.*

Mr. Aguila argues the district court erred in reaching its determination that Appellees were likely to succeed on the merits. He contends the district court erred: (1) "legally and factually in concluding that [Mr.] Aguila did not establish substantial questions of validity that cannot be characterized as substantially meritless"; (2) "legally and factually in concluding that [Mr.] Aguila's accused products infringed [A]ppellees' ['620 patent]"; (3) "legally and factually in concluding that the [A]ppellees' device is based on the first claim of the ['620 patent]"; (4) "in ruling that the [A]ppellees are likely to withstand [Mr.] Aguila's obviousness challenge"; and (5) in finding the asserted claims were not obvious "despite the evidence that a person of ordinary skill in the art would have . . . modified a prior art patent to include the . . . inventive feature" and despite Appellees' "failure to show any nexus between any secondary indicia of non-obviousness and the allegedly inventive feature." Appellant's Br. 8–9.

Mr. Aguila did not present Arguments (2)–(5) to the Magistrate Judge. These arguments are therefore waived. *See Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005) ("Arguments not made in the court or tribunal whose order is under review are normally considered waived."). We address Mr. Aguila's remaining arguments below.

### 1. The District Court Did Not Err in Finding Appellees Were Likely to Prevail on Aguila's Patent Invalidity Challenge

Mr. Aguila contends the '620 patent is anticipated by the '739 patent and is therefore invalid. Appellant's Br. 25–27. Additionally, Mr. Aguila reproduces a claim chart that compares claim 1 of the '620 patent to disclosures of the '739 patent, emphasizing portions of the '739 patent's disclosure.[3] *Id.* at 26–27. However, he does not offer any argument in connection with the claim chart. Mr. Aguila further asserts that U.S. Patent Nos. 4,378,804 ("the '804 patent") and 5,037,431 ("the '431 patent") anticipate the '620 patent as well. *Id.* at 27. The record, as presented to this court, does not demonstrate that Mr. Aguila sufficiently developed and presented his '804 and '431 patent validity arguments to the Magistrate Judge.[4] According-

---

[3] Mr. Aguila submitted this exact claim chart to the district court in his Memorandum in Opposition to Appellees' Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction, Docket Entry 35. *Compare* Appellant's Br. 26–27 (claim chart presented to this court), *with* Appellant's Suppl. App. 78–79 (claim chart presented to the district court).

[4] Appellees acknowledge in their brief that Mr. Aguila argued to the district court that the '620 patent was invalid over the '804 and '431 patents. *See* Appellees' Br. 22. The record evidence submitted to this court

ly, these validity arguments are waived and will not be considered. *See Gant*, 417 F.3d at 1332.

Mr. Aguila also asserts the district court erred in rejecting his '739 patent validity argument; however, this argument does not advance any theory explaining how the district court abused its discretion in rejecting Mr. Aguila's invalidity argument. He presented the '739 patent to the Magistrate Judge, but "offered no testimony or other evidence" to support his invalidity argument. Appellees' Suppl. App. 27. "[A]n alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear

---

demonstrates Mr. Aguila made conclusory statements regarding the validity of the '804 patent in his Memorandum in Opposition to Appellees' Motion for Ex Parte Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction. *See* Appellees' Suppl. App. 43 (Docket Entry 35); Appellant's Suppl. App. 78–79 (excerpt from Docket Entry 35). Except for changing the name of the party, Mr. Aguila copied these conclusory arguments into his appeal brief. *Compare* Appellant's Br. 27 (anticipation argument presented to this court), *with* Appellant's Suppl. App. 79 (anticipation argument presented to the district court). However, the record does not demonstrate the Magistrate Judge considered these arguments. *See* Appellees' Suppl. App. 1–33. Assuming Appellant's arguments are not waived for failure to sufficiently develop these arguments below, we find these arguments are waived for failure to present more than conclusory arguments on appeal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding that when "a party includes no developed argumentation on a point . . . we treat the argument as waived" (quoting *Anderson v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004)).

and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009) (footnote and citation omitted). "'[T]estimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference.'" *Koito Mfg. Co.*, 381 F.3d at 1152 (quoting *Schumer v. Lab. Comput. Sys., Inc.,* 308 F.3d 1304, 1315–16 (Fed. Cir. 2002)). Testimony that is "'merely conclusory'" is insufficient. *Id.* (quoting *Schumer*, 308 F.3d at 1315–16). "It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out . . . ." *Schumer*, 308 F.3d at 1316. "Indeed, to accept confusing or generalized testimony as evidence of invalidity is improper." *Id.* This is exactly what Mr. Aguila asked the Magistrate Judge to do and, in turn, asks us to do. He offered into evidence only the patents themselves, without any expert testimony or anticipation analysis. Accordingly, the district court did not abuse its discretion in finding that Mr. Aguila failed to raise a substantial question regarding validity.

### 2. The District Court Did Not Err in Finding Appellees Were Likely to Prevail on Their Patent Infringement Claim

Mr. Aguila argues the district court erred: (1) in "ruling that the [A]ppellees' handpiece meets every limitation of [c]laim 1 of the [']620 patent without making any kind of claim construction analysis"; (2) in "construing [A]ppellees' handpiece to contain an 'abrasive fragment' when it has no abrasive materials that make contact with the skin"; and (3) in "relying on the [declaration] of

Lealani Irby[5] for an example of [Mr.] Aguila's infringing handpiece (*i.e.* handle)." Appellant's Br. 21–22.

The Magistrate Judge did not err in construing terms in claim 1. Claim 1 was construed "consistent with the ordinary and customary meaning of the terms used." Appellees' Suppl. App. 25; *see Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc). Mr. Aguila's additional contentions as to claim construction are irrelevant on appeal, as these arguments were not made in the proceeding below and are therefore waived. *See Gant*, 417 F.3d at 1332.

Mr. Aguila's third assertion is also incorrect. The Magistrate Judge explicitly stated "a court may rely on affidavits at the preliminary injunction stage if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" Appellees' Suppl. App. 3 (quoting *Levi-Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 984 (11th Cir. 1995)). While the district court has the authority to consider declarations at the evidentiary hearing, the Magistrate Judge elected "to not do so here. The core issue in dispute . . . raise[s] questions of credibility, which is best evaluated when presented with live testimony." *Id.* As a result, the Magistrate Judge required live testimony in lieu of affidavits. The Magistrate Judge explicitly stated he was not relying on any written declaration, which was within his proscribed power. Any error alleged by Mr. Aguila regarding the content of Ms. Irby's declaration is irrelevant.

C. The *Winter* Factors Support Granting a Preliminary Injunction for Trademark Infringement

---

[5]   Ms. Irby filed a declaration in support of Appellees' Motion for Preliminary Injunction. Appellees' Br. 26 n.5.

Establishing a prima facie case under the Lanham Act, 15 U.S.C. § 1125(a) (2012), requires a plaintiff to show "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it 'such that consumers were likely to confuse the two.'" *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647–48 (11th Cir. 2007) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir. 1997)).

During the preliminary injunction proceedings, Mr. Aguila did not dispute that his use of Appellees' marks was likely to cause confusion. Appellees' Suppl. App. 16. Rather, he claimed he was the first to use the trademarks in dispute and Appellees therefore could not claim ownership over those marks. In order to prevail, Appellees must "establish their ownership of the trademark by a preponderance of the evidence." *SM Licensing Corp. v. U.S. Med. Care Holdings, LLC*, No. 07-20293-CIV, 2007 WL 2051009, at * 9 (S.D. Fla. 2007).

The Magistrate Judge determined Appellees proved ownership for three marks registered with the United States Patent and Trademark Office, which is "prima facie evidence of the mark's validity and of the registrant's ownership of . . . the trademark . . . ." Appellees' Suppl. App. 17 (citing 15 U.S.C. § 1115(a)). Appellees assert a common law right to the remaining eight marks in dispute. *Id.*

Ownership of a common law mark is demonstrated by showing "(1) it is the prior user of the unregistered mark in the area and (2) it acquired a protectable interest in the mark because the mark is either inherently distinctive or has acquired a secondary meaning." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 703 F. Supp. 2d 1307, 1312 (S.D. Fla. 2010) (citation omitted). During the preliminary injunction proceedings, Mr. Aguila only

disputed the prior use of the marks. Appellees' Suppl. App. 18. The Magistrate Judge determined Appellees provided evidence that "firmly establishes" that they were "the first to use the trademarks in dispute." *Id.* The Magistrate Judge determined that the Appellees' testimony was more persuasive than Mr. Aguila's uncorroborated testimony. *Id.* at 19.

The Magistrate Judge also rejected evidence submitted by Mr. Aguila (i.e., two invoices) several weeks after the evidentiary hearing. *Id.* The Magistrate Judge stated that he held a "telephonic status conference" before the evidentiary hearing. *Id.* at 20. During that meeting, the Magistrate Judge "made clear that [he] expected [the parties] to present all their evidence that bore on any issues in dispute at that hearing." *Id.* The Magistrate Judge also observed Mr. Aguila's reliance on his pro se status and his alleged lack of familiarity with the Federal Rules of Evidence was disingenuous because he displayed a familiarity with these rules. *Id.* at 20. The Magistrate Judge disregarded Mr. Aguila's rationale for leaving the original invoices in Germany—i.e., that he lacked an understanding of the evidentiary rules and thought they would be inadmissible hearsay—because Mr. Aguila was explicitly informed before the hearing, and before flying from Germany to Miami for the hearing, that all evidence was expected to be presented at that hearing. *Id.* at 20– 21. The Magistrate Judge concluded his analysis by noting the authenticity of the untimely-submitted invoices would have been at issue: "[t]here is nothing inherent about the documents to suggest they are authentic. I would not have admitted these documents into evidence at the hearing without first having [Mr. Aguila] questioned, under oath, about their creation and preservation." *Id.*

Mr. Aguila argues the district court erred in excluding "into evidence the two old invoices from [Mr.] Aguila that show[s] that he was using the trade name of 'Edge Sys-

tems['] and the 'E' logo before the [A]ppellees." Appellant's Br. 28. Mr. Aguila contends "[t]he Magistrate Judge provide[d] no reason[] not to believe neither [Mr.] Aguila's declaration nor [Mr.] Aguila's invoices." *Id.* However, this statement is inapposite because the documents were excluded as untimely. Mr. Aguila cites no precedent supporting his assertion that the district court abused its discretion in excluding his untimely evidence. *See* Appellees' Suppl. App. 21 (The Magistrate Judge asserted that "[s]imple notions of fairness counsel to not accept these [] documents after both parties rested their case and the hearing concluded.").

In reviewing the district court's application of local procedural rules, we give broad deference to the district court. *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292 (Fed. Cir. 2005). "[W]hen reviewing that exercise of discretion this court determines whether (1) the decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no evidence upon which the court rationally could have based its decision." *Id.* (internal quotation marks and citation omitted).

Based on the reasoning provided by the Magistrate Judge, we find that there was no abuse of discretion. The Magistrate Judge informed the parties of his expectations for evidence before the evidentiary hearing. The Magistrate Judge's decision to exclude the untimely evidence was consistent with his order and the local evidentiary rules. We find no error in the Magistrate Judge's decision.

### 1. The District Court Did Not Abuse Its Discretion in Rejecting Mr. Aguila's Laches Defense to the Claim of Trademark Infringement

The doctrine of laches is an affirmative defense, Fed. R. Civ. P. 8(c), based on a party's unexcused delay that

prevents that party from asserting a claim after too much time has passed. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1967 (2014) (describing laches as "unreasonable, prejudicial delay in commencing suit").

During the preliminary injunction proceeding, Mr. Aguila asserted Appellees' trademark infringement claim was barred by laches. The Magistrate Judge determined that Mr. Aguila "base[d] his laches defense on the cease and desist letter that [Appellees] sent him in January 2010. . . . Shortly after this cease and desist letter, [Mr. Aguila] formally dissolved DiamondSkin Systems by filing Articles of Dissolution with the Florida Secretary of State." Appellees' Suppl. App. 22 (citation omitted). The Magistrate Judge determined Mr. Aguila "did not offer any contemporaneous evidence that he continued sales between 2010 and 2014, nor did he demonstrate that [Appellees] knew or should have known of such ongoing infringement years before they filed this suit." *Id.* at 239. The Magistrate Judge found the Appellees' witnesses credible and determined Appellees' response of taking no further action after the 2010 letter was reasonable because they believed the matter was closed once Mr. Aguila's company was dissolved. *Id.* Appellees' delay was excusable.

Mr. Aguila bears the burden of proving the affirmative defense of laches. *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir. 1984). Proving laches requires demonstrating: "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice." *Id.* at 1517 (footnote and citation omitted). In the trademark context, "[d]elay is measured from the time the plaintiff knew or should have known that it had a provable claim for infringement, but it is under no obligation to sue until the likelihood of confusion looms large." *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 5 F. Supp. 3d 1368, 1375 (S.D. Fla. 2014) (citation omitted); *see AmBrit, Inc.*

*v. Kraft, Inc.*, 812 F.2d 1531, 1546 (11th Cir. 1986) (discussing laches and delay in asserting rights). "The amount of prejudice suffered by the defendant is weighed against the public interest in avoiding confusion." *Buccellati Holding Italia SPA*, 743 F. Supp. 3d at 1375 (citation omitted).

On appeal, Mr. Aguila asserts that laches should equitably estop Edge from asserting its trademark rights, and that therefore Mr. Aguila should be allowed to continue his use of "Edge Systems" and "E" trademarks. Mr. Aguila's arguments are mere restatements of what he previously argued to the Magistrate Judge. His arguments are *ipse dixit,* failing to provide any reasoned analysis of the applicable law to the facts of this case. Mr. Aguila also does not point to any error the Magistrate Judge made. Accordingly, we find there was no abuse of discretion.

### D. The District Court Did Not Abuse Its Discretion in Granting a Preliminary Injunction for Trade Dress Infringement

"Trade Dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *AmBrit, Inc.*, 812 F.2d at 1535 (internal quotation marks and citation omitted). "[T]o prevail on a trade dress infringement claim under § 43(a) [of the Lanham Act, 15 U.S.C. § 1125(a)], the plaintiff must prove three elements: 1) its trade dress is inherently distinctive or has acquired secondary meaning, 2) its trade dress is primarily non-functional, and 3) the defendant's trade dress is confusingly similar." *Id.* (citation and footnote omitted).

During the preliminary injunction proceeding, Mr. Aguila's only challenge to Appellees' claim of trade dress infringement was that Aguila "was the first to use the trade dress in dispute." Appellees' Suppl. App. 24. The

Magistrate Judge determined the only evidence submitted by Mr. Aguila to support his argument was uncorroborated testimony, which the Magistrate Judge found not credible. *Id.* Thus, the Magistrate Judge determined Appellees had a likelihood of success on its claim of trade dress infringement. *Id.* at 23–24.

On appeal, Mr. Aguila presents conclusory statements regarding trade dress infringement. He does not advance developed arguments nor does he cite to legal precedent in support of his position. Accordingly, Mr. Aguila has waived his trade dress infringement argument. *See SmithKline Beecham Corp.*, 439 F.3d at 1320.

Additionally, Mr. Aguila argues, for the first time on appeal, that Appellees' trade dress is only functional. "[I]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008) (internal quotation marks and citation omitted). Mr. Aguila has not proffered any argument to warrant deviation from this general rule and has waived this issue. *See id.* (listing circumstances where arguments not raised below may be heard on appeal).

E. The Remaining *Winter* Factors Favor Appellees

The Magistrate Judge concluded its opinion by analyzing the remaining *Winter* Factors of irreparable injury, balance of the hardships, and the public interest. The Magistrate Judge concluded: (1) Appellees are likely to suffer irreparable harm in the absence of a preliminary injunction; (2) an analysis of the balance of the hardships favors issuing the preliminary injunction; and (3) the public interest is best served by protecting consumers from being misled about the source of the manufacturer of the machines and serums in question. Appellees' Suppl. App. 28–31.

On appeal, Mr. Aguila contends that the district court erred "legally and factually in concluding that the [A]ppellees are [] likely to suffer irreparable harm in the absence of preliminary relief." Appellant's Br. 8. Mr. Aguila also contends the district court erred "in finding irreparable harm, despite the [A]ppellees' failure to show a specific nexus between its alleged harm and . . . [Mr. Aguila's] practice of the purportedly inventive feature." *Id.* at 9.

Mr. Aguila fails to further discuss these statements later in his brief or analyze them against the operative legal framework. Accordingly, we deem these arguments waived. *See SmithKline Beecham Corp.*, 439 F.3d at 1320. Based on the record before the Magistrate Judge, we find the court did not abuse its discretion in granting Appellees a preliminary injunction for patent infringement, trademark infringement, and trade dress infringement.

CONCLUSION

We have considered Mr. Aguila's remaining arguments and find them unpersuasive. Accordingly, the decision of the of the United States District Court for the Southern District of Florida is

**AFFIRMED**

COSTS

Each party shall bear its own costs.