NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**EDGE SYSTEMS LLC, A CALIFORNIA LIMITED LIABILITY COMPANY, AXIA MEDSCIENCES, A DELAWARE LIMITED LIABILITY COMPANY,**
*Plaintiffs-Appellees*

**v.**

**RAFAEL NEWTON AGUILA, AKA RALPH AGUILA, DBA HYDRADERMABRASION SYSTEMS,**
*Defendant-Appellant*

———————————

2016-2189, 2016-2384, 2017-1030

———————————

Appeals from the United States District Court for the Southern District of Florida in No. 1:14-cv-24517-KMM, Judge K. Michael Moore.

———————————

Decided: September 8, 2017

———————————

RAFAEL NEWTON AGUILA, South Miami, FL, pro se.

BRENTON R. BABCOCK, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, for plaintiffs-appellees. Also represented by ALI S. RAZAI.

———————————

Before PROST, *Chief Judge,* WALLACH and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Rafael Newton Aguila appeals from the final judgement of the Southern District of Florida in a trademark and patent infringement suit filed by Edge Systems LLC and Axia Medscienes, LLC.[1]  Specifically, Aguila argues that the district court abused its discretion by dismissing one of his affirmative defenses, imposing Rule 11 sanctions, denying his motion to strike the expert report of Edge Systems' patent infringement expert, and granting a protective order that reduced the number of depositions Aguila was allowed to take.  Aguila also challenges some of the district court's summary judgment determinations and the scope of the district court's permanent injunction.  Because the district court neither erred nor abused its discretion, we affirm.

## BACKGROUND

The district court's apt summation of this case sets the stage on appeal: "Bootleg. Clone. Copycat. Imitation. Knock-off. Palm-Off. However one labels a peddled product that conspicuously capitalizes on another's intellectual property rights, this case presents the quintessential example." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1337 (S.D. Fla. 2016) ("*Summary Judgment Order*").

Edge Systems was founded in 1997, and has continuously designed and sold products that improve skin health.  Edge Systems' best-selling product, the HydraFacial MD® hydradermabrasion system is covered by U.S. Patent Nos. 6,299,620, 6,641,591, 7,678,120,

---

[1]    Unless otherwise indicated, we collectively refer to both Edge Systems and Axia Medscienes as Edge Systems.

7,789,886, 8,066,716, and 8,337,513 (collectively, "the Asserted Patents"). The '620 patent, for example, discloses "[a] system for atraumatic removal of skin surface layers in a treatment to induce neocollagenesis in the dermis to reduce wrinkles and alter the architecture of the dermal layers." '620 patent, Abstract. Claim 1 of the '620 patent is reproduced below:

1. A system for treating surface layers of a patient's skin, comprising:

(a) an instrument body with a distal working end for engaging a skin surface;

(b) a skin interface portion of the working end comprising an abrasive fragment composition secured thereto;

(c) at least one inflow aperture in said skin interface in fluid communication with a fluid reservoir; and

(d) at least one outflow aperture in said skin interface in communication with a negative pressurization source.

*Id.* at col. 9 ll. 54–63.

Edge Systems also has common law trademark rights in, *inter alia*, the following marks: (1) ACTIV-4; (2) ANTIOX-6; (3) BETA HD; and (4) DERMABUILDER (collectively, "the Serum Marks").[2]

In 2014, Edge Systems learned that Aguila was selling a device similar to its HydraFacial MD® system on a website using the trademarks and trade name of Edge Systems' competitor, Lumenis. Edge Systems and Lu-

---

[2] Aguila does not challenge on appeal the district court's determination that Edge Systems had valid common law trademark rights in the Serum Marks.

menis separately sent Aguila cease and desist letters, and Aguila subsequently changed the website and created an additional website, using Edge Systems' trademarks and trade name.

At least two different customers purchased an accused infringing device from Aguila, thinking the device was made by Edge Systems. One of the customers called a number on Aguila's website and spoke to an individual purporting to be the Regional Sales Manager for Edge Systems. When the customer asked why Aguila's device had a different name than the HydraFacial MD®, she was informed that the device was Edge Systems' newest upgrade of the HydraFacial MD®. A side-by-side comparison of Edge Sytems' HydraFacial MD® and Aguila's accused infringing device is shown below:

*Summary Judgment Order*, 186 F. Supp. 3d. at 1338.






EDGE HYDRAFACIAL® PRODUCT          DEFENDANT'S ACCUSED PRODUCT

Edge Systems, along with Axia Medsciences, the owner of the Asserted Patents, brought suit against Aguila in the Southern District of Florida, claiming both patent and trademark infringement. The district court swiftly granted Edge Systems a preliminary injunction, enjoining Aguila from infringing Edge Systems' trademarks, trade dress, and the '620 patent. *Edge Sys. LLC v. Aguila*, Case No. 1:14-cv-24517-KMM, 2015 WL 11233387 (S.D. Fla. June 3, 2015). We affirmed the district court's preliminary injunction on appeal. *Edge Systems LLC v. Aguila*, 635 F. App'x 897, 907 (Fed. Cir. 2015).

Edge Systems also moved for summary judgment. The district court granted Edge Systems' motion for summary judgment and permanently enjoined Aguila from infringing Edge Systems' trademarks and the claims of the '620 patent. *Summary Judgment Order*, 186 F. Supp. 3d at 1363–64. Following the district court's summary judgment order, Edge Systems filed a motion to voluntarily dismiss its remaining claims, which the district court granted and, thereafter, closed the case.

Aguila now appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Aguila argues that the district court abused its discretion by dismissing one of his affirmative defenses, imposing Rule 11 sanctions, denying his motion to strike the expert report of Edge Systems' patent infringement expert, and granting a protective order that reduced the number of depositions Aguila was allowed to take. Aguila also challenges some of the district court's summary judgment determinations and the scope of the district court's permanent injunction. We address each argument in turn.

## I.

Aguila first challenges the district court's dismissal of his affirmative defense of prior trademark use and imposition of Rule 11 sanctions based on Aguila's repeated attempts to rely on two evidentiary items of dubious authenticity: (1) an invoice purportedly from 1996; and (2) an invoice purportedly from 2004. Aguila relied on the two invoices to support his prior use of trademarks affirmative defense. The district court was unconvinced that these invoices were authentic and had "grave concerns over [Aguila's] willingness to manufacture evidence and abuse the judicial process." *Edge Sys. LLC v. Aguila*, Case No. 1:14-cv-24517-KMM, 2015 WL 6447502, at *7

(S.D. Fla. Oct. 26, 2015). The district court granted Edge System's motion to strike Aguila's prior use affirmative defense, holding that "[c]lear and convincing evidence has been presented that [Aguila] knowingly advanced a document of questionable authenticity and relied upon it in [his] pleadings." *Id.*

Notwithstanding the district court's order, Aguila continued to rely on these invoices throughout the summary judgment proceedings. As a result, the district court imposed Rule 11 sanctions in the form of attorneys' fees and costs from the date the invoices were initially submitted during the preliminary injunction proceeding. The district court reasoned that "Aguila's continued reliance on fraudulent documents clearly runs afoul of Rule 11[,] and sanctions—including the award of attorney's fees to Edge—are appropriate for Aguila's bad faith conduct." *Summary Judgment Order*, 186 F. Supp. 3d at 1345 n.10.

On appeal, Aguila argues that the district court abused its discretion by striking his prior use affirmative defense and imposing Rule 11 sanctions based on his reliance on the invoices. We disagree.

The imposition of sanctions under the district court's inherent power or Rule 11 is reviewed for an abuse of discretion. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991) (inherent power); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990) (Rule 11). "When employing an abuse of discretion standard, 'we must affirm unless we at least determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard.'" *Maiz v. Virani*, 253 F.3d 641, 662 (11th Cir. 2001) (quoting *Alexander v. Fulton Cty.*, 207 F.3d 1303, 1326 (11th Cir. 2000)).

Here, the district court did not abuse its discretion in striking Aguila's prior use affirmative defense. The striking of an affirmative defense falls within the ambit of

the district court's inherent powers.  *Chambers*, 501 U.S. at 43.

The district court questioned the authenticity of Aguila's invoices based on findings that "[t]he quality of the purported invoices is extremely poor," S.A. at 2102, and "[t]here is nothing inherent about the documents to suggest they are authentic," *id.* at 2103.  The court also emphasized Aguila's contradictory testimony during the preliminary injunction hearing.  For example, the 1996 invoice purports to have sold a "HydraPeel system." *Id.* at 2222.  Aguila testified, however, that he was selling a system called the Dermis Peel in 1996, and did not start selling the HydraPeel system until it was developed in 2003.  *Id.* at 2017–19 ("So I decided to start distributing some machines at that point in 1996 under the name -- the actual name of the machine was Dermis Peel . . . .  By 2003, we had started developing a liquid-based system that we would call . . . HydraPeel.").  Further, the 2004 invoice purports to have sold, inter alia, the HydraDerm MD.  *Id.* at 2224.  Aguila testified, however, that in 2004, his system was "called [] the HydraDerm.  Not the HydraDerm MD.  That would come later.  But HydraDerm." *Id.* at 2020.

On this record, considering Aguila's untimely submission of the invoices, the invoices' questionable authenticity, the lack of any corroborating evidence to support the authenticity of the invoices, and Aguila's testimony contradicting the substance of the invoices, it was not an abuse of discretion for the district court to strike Aguila's prior use affirmative defense based on those invoices.

The district court likewise did not abuse its discretion in granting Rule 11 sanctions.  Under Eleventh Circuit

law,[3] "where no evidence or only 'patently frivolous' evidence is offered to support factual contentions, sanctions can be imposed." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 665 (11th Cir. 2010).

Here, the district court determined that "Aguila only offered documents of an unquestionably fraudulent nature in support of his stricken defense of prior use dating back to 1996" and "Aguila's continued reliance on fraudulent documents clearly runs afoul of Rule 11." *Summary Judgment Order*, 186 F. Supp. 3d at 1345 n.10. On this record, the district court's imposition of Rule 11 sanctions in the form of attorneys' fees and costs from the date Aguila introduced the invoices was not an abuse of discretion.

## II.

Aguila next argues that the district court abused its discretion by denying his motion to strike the expert testimony of Edge Systems' patent infringement expert, Gary L. Loomis. Aguila argues that Edge Systems' untimely served Loomis's expert report after the discovery deadline.

Rule 26 of the Federal Rules of Civil Procedure provides, in pertinent part, that a party must make its expert disclosures "at the times and in the sequence that the court orders," and "[a]bsent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D). Here, the court issued a

---

[3] "In deciding issues not unique to our exclusive jurisdiction, we apply the law of the regional circuit in which the district court sits." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). We therefore apply the law of the Eleventh Circuit to these issues.

scheduling order requiring that "[a]ll discovery, *including expert discovery*, shall be completed one hundred (100) days prior to the date of trial." S.A. 3576 (emphasis added). The scheduling order also set a trial date of February 22, 2016. *Id.* Thus, all expert discovery was due by November 13, 2015.

Edge Systems served Loomis's report on November 24, 2015—90 days before the February 22, 2016 trial date. Had the court not set its discovery deadline of 100 days before trial, Loomis's report would have been timely under Rule 26(a)(2)(D)(i). Instead, Loomis's report was served 10 days after the court's deadline and, thus, was untimely. Determining that Edge Systems violated Rule 26, however, comprises only half the inquiry. *See OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008). "Under Rule 37(c)(1), a district court clearly has authority to exclude an expert's testimony where a party has failed to comply with Rule 26(a) *unless the failure is substantially justified or is harmless.*" *Id.*

The district court did not abuse its discretion in declining to exclude Loomis's report. Rule 37(c)(1) merely authorizes the district court to exercise its discretion to exclude untimely reports; it does not *require* the district court to do so. "A district court has inherent authority to manage its own docket 'so as to achieve the orderly and expeditious disposition of cases.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) (quoting *Chambers*, 501 U.S. at 43). Indeed, "district courts enjoy broad discretion in deciding how best to manage the cases before them." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997). In any event, we agree with Edge Systems that the ten-day delay here was harmless.

Aguila nonetheless argues that Edge Systems' late disclosure was harmful because it "den[ied] him the

possibility to schedule a deposition with [Loomis]." Appellant Br. 21. Such harm, however, is belied by the record. The day Loomis's report was served, Aguila requested the opportunity to depose Loomis. Edge Systems responded, indicating an intent to make Loomis available for deposition. Aguila, however, did not make any subsequent effort to proceed with Loomis's deposition. Because Edge Systems was willing to make Loomis available for deposition after its untimely disclosure, its failure to comply with Rule 26(a) was harmless, and the district court did not abuse its discretion in denying Aguila's motion to strike Loomis's report under Rule 37.

## III.

Aguila also argues that the district court abused its discretion in granting in part Edge System's motion for a protective order, limiting his allowed number of depositions from ten to five. The district court's determination is reviewed for an abuse of discretion. *McCarthy v. Barnett Bank of Polk Cty.*, 876 F.2d 89, 91 (11th Cir. 1989).

During a status conference on July 10, 2015, the district court warned Aguila that "what you don't want to do is [to] be issuing your discovery requests so late that as a practical matter you make it impossible for the parties to complete discovery within that [November 24th] deadline." S.A. 2652. The district court additionally cautioned Aguila that, "[i]f you want a 30(b)(6) deposition of [Edge Systems], notice it now. Follow the rules." *Id.* at 2653.

Three weeks before the November 13, 2015 discovery deadline, on October 23, 2015, Aguila served a notice requesting a Rule 30(b)(6) deposition of Edge Systems, identifying 90 separately identified topics. Two days later, Aguila served eleven more deposition notices: one Rule 30(b)(6) deposition of Axia Medsciences on 117 separately identified topics and ten individual depositions. Aguila subsequently agreed to reduce the number of depositions to ten pursuant to Rule 30(a). Aguila

unilaterally scheduled these ten depositions during the last week of discovery, scheduling five for the last day before the discovery deadline. Edge Systems subsequently filed its motion for protective order.

The magistrate judge granted Edge System's motion in part, allowing Aguila to take five of the ten noticed depositions. At a hearing on the motion, the magistrate judge repeatedly questioned Aguila as to the reasons for taking the various depositions. The magistrate judge determined that it was reasonable to reduce the number of depositions from ten to five. The magistrate judge explained his reasoning as follows:

> So I think what's reasonable to do here is to limit the depositions to -- the 30(b)(6) depositions of Edge and Axia and to the depositions of Shadduck, Cohen and Ignon.
>
> I pick them, first of all, because the other depositions . . . honestly, Mr. Aguila, I am very unpersuaded that you have a decent basis to think that they could produce much at all in the way of meaningful evidence that relates to the claims or defenses.
>
> So that's a very to me a dubious thought. I don't think you really know. I think you're guessing. You're going off of a . . . title and kind of -- I'm not hearing too much more than that.
>
> And you really sprung those on the Plaintiff at the last minute. Shadduck, Cohen and Ignon, the Plaintiff has known for quite some time that those folks could be deposed. So in terms of their ability to, you know, foresee that there would be a deposition and to think about what the issues are and prepare I think the Plaintiffs [are] in a reasonable position to do that.

S.A. 2934–35. Aguila objected to the magistrate judge's order, which the district judge implicitly denied when final judgment was entered. *See Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc.*, 853 F.2d 834, 840 nn.17, 19 (11th Cir. 1988); *WSB-TV v. Lee*, 842 F.2d 1266, 1268 n.1 (11th Cir. 1988).

Rule 26(c) of the Federal Rules of Civil Procedure provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Eleventh Circuit "also require[s] the district court to balance the interests of those requesting the order." *McCarthy*, 876 F.2d at 91.

On this record, the district court did not abuse its discretion in granting a protective order. We see no error in the district court court's finding that Aguila had no basis for believing that five of his noticed depositions would result in any evidence related to the claims or defenses at issue. Likewise, we see no error in the district court's determination that Aguila's last-minute noticing of these five baseless depositions placed an undue burden on Edge Systems. In any event, even if the district court had abused its discretion in limiting Aguila's depositions, such error would be harmless, as Aguila did not even take the five depositions allowed by the district court.

## IV.

Aguila next challenges the scope of the district court's permanent injunction. The district court permanently enjoined Aguila from using, copying, simulating, or in any other way infringing, *inter alia*, the Serum Marks. This injunction followed the district court's determination that Edge Systems has valid common law rights in the Serum Marks and that Aguila infringed those marks.

Aguila does not challenge these determinations on appeal. Rather, Aguila argues that the district court's

permanent injunction effectively invalidates Aguila's similar registered trademarks, which Aguila sought from the United States Patent and Trademark Office on December 1, 2014, the same day the district court signed a temporary restraining order enjoining Aguila from infringing, *inter alia*, the Serum Marks. The PTO granted Aguila's applications in July 2015, without knowledge of Edge Systems' common law rights in the same Serum Marks.

We reject Aguila's contention that the district court's injunction in this case invalidates its registered trademarks. The permanent injunction relates to the district court's determination that Edge Systems had valid common law trademark rights in the Serum Marks and that Aguila had infringed these marks. That Aguila applied for and received federal registration of the Serum Marks during the pendency of this action—albeit under seemingly dubious circumstances—is of no consequence. Accordingly, in light of the district court's determinations of ownership and infringement, which are unchallenged on appeal, the district court did not err in permanently enjoining Aguila from using, copying, simulating, or in any other way infringing Edge Systems' common law rights in the Serum Marks.[4]

## V.

Aguila next challenges the district court's summary judgment of infringement of Edge Systems' patents. Although we apply our own law to issues of substantive patent law, we review the grant of summary judgment using the standard of review of the relevant regional circuit. *Accenture Glob. Servs., GmbH v. Guidewire*

---

[4] Edge Systems has filed petitions for the cancellation of Aguila's trademarks with the PTO, which are currently pending.

*Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed. Cir. 2013). The Eleventh Circuit "review[s] de novo the district court's grant of summary judgment, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party." *Rodriguez v. Doral*, 863 F.3d 1343, 1349 (11th Cir. 2017). "A district court should grant summary judgment only if the movant establishes the absence of a genuine issue of material fact." *Id.*

The district court granted summary judgment of infringement of the '620 patent, determining that "[n]o reasonable jury could find that each limitation of Claim 1 of the '620 Patent is not literally present in Aguila's accused products." *Summary Judgment Order*, 186 F. Supp. 3d at 1355. The district court similarly granted summary judgment of infringement of the '591 patent. *Id.* at 1356.

Without citation to any record evidence, Aguila argues on appeal that his accused products do not contain a "skin interface portion of the working end comprising an abrasive fragment composition secured thereto," as required by claim 1 of the '620 patent, or a "skin interface comris[ing] an abrading structure with substantially sharp edges for abrading tissue," as required by claim 1 of the '519 patent. Apart from these conclusory arguments on appeal, Aguila presents no evidence to support his noninfringment argument.

On the other hand, Edge Systems' patent infringement expert, Gary Loomis, relied on, *inter alia*, statements from Aguila's own website describing the accused infringing products and testified that these limitations are found in Aguila's accused infringing products. Because Aguila fails to introduce any contrary evidence, we conclude, as did the district court, that Aguila failed to present evidence sufficient to create a genuine issue of material fact as to infringement of the '620 and '591

patents. Accordingly, we affirm the district court's summary judgment in Edge Systems' favor on these claims.[5]

## VI.

Aguila finally argues that the district court's permanent injunction should be barred by the doctrine of laches. We previously addressed and denied Aguila's laches defense. *Edge Systems*, 635 F. App'x at 907. There, we held that Aguila's laches defense was "*ipse dixit*, failing to provide any reasoned analysis of the applicable law to the facts of this case." *Id.* Here, Aguila similarly fails to provide any reasoned analysis of the applicable law to the facts of this case. Accordingly, the district court did not err in barring the injunction based on Aguila's propounded laches defense.

### CONCLUSION

We have carefully considered Aguila's remaining arguments and determine that they lack merit. We affirm.

### **AFFRIMED**

### COSTS

Costs to Appellees.

---

[5] Following the district court's summary judgment order, Edge Systems moved to voluntarily dismiss its remaining claims, which the district court granted, and subsequently closed the case. Aguila argues that the district court erred in closing the case because the infringement claims related to the '591 patent remained unadjudicated. Aguila is mistaken. As discussed above, the district court granted summary judgment of literal infringement of the '591 patent. *Summary Judgment Order*, 186 F. Supp. 3d at 1356.